MOORE, J.
*1184 Following a bench trial, Thomas Casey White was convicted as charged for the attempted second degree murder of Charles Ashlock. White was sentenced to 20 years at hard labor, the first 10 years to be served without benefits. White now appeals.
The absence in the record evidencing a valid waiver of White's right to trial by jury requires that we vacate White's conviction and sentence.
FACTS
Mid-afternoon on February 25, 2013, while riding in the passenger seat of a pickup truck driven by Charles Ashlock on Naff Avenue near Highway 165 South in Bastrop, Louisiana, Casey White, age 42, suddenly told Ashlock, "I'm gonna kill you," and he pulled out his pocket knife and slashed Ashlock's throat. Ashlock received several more stab wounds as he fended off the attack. Meanwhile, Ashlock's truck veered off the road, knocking out a fence in front of a house before coming to a stop in the ditch in front of the house. White jumped out of the truck and fled. Ashlock got out of the truck and knocked at the door of the house to get help. He removed his shirt and wrapped it around his neck to help stop the bleeding. He got back into the truck and, fortunately, he was able to back it out of the ditch.
Driving north on Martin Luther King South, Ashlock came up behind a Morehouse Parish Sheriff's vehicle travelling in the same direction. He began honking his horn behind the police unit. Hearing the horn, Deputy Sara Coleman stopped her police unit. She got out and saw the shirtless Ashlock covered in blood with a "towel" around his neck. Ashlock told her he had been stabbed by his best friend. Concerned over his loss of blood, Deputy Coleman put Ashlock in the front seat of her vehicle and drove him to Morehouse General Hospital. Although critically injured, Ashlock survived.
Police went to Ashlock's home searching for White. He was not there, nor had Ashlock's wife seen White since he left with her husband earlier in the day. White was well known to the couple, and he had been living with Ashlock and his wife, Joanna, who were trying to help White. They knew that White was schizophrenic and thought he was taking his medication.[1]
Police spoke with White's grandmother who lived next door to the Ashlocks. She informed them that White was on several types of medication, including one for schizophrenia.
The next day, White's grandmother notified authorities that he could be found at the Preferred Inn, Room 364, in Bastrop. White was taken into custody without incident. He told officers that he was taken off some of his medications and was hearing voices. It is also not disputed that White was experiencing paranoid delusions at that time. In his statement to police, White said that the night before the attack, he overheard the Ashlocks talking about getting rid of something by taking it off. He assumed that they were talking about getting rid of him.
In light of White's history of mental illness, his trial counsel filed a motion for appointment of a sanity commission. Drs. James B. Pinkston and John R. Turpin were appointed to the commission. On June 26, 2014, White was committed to the Department of Health and Hospitals. On *1185 September 12, 2014, White's doctor at the mental institution confirmed that he was now competent to stand trial.
White entered a plea of not guilty and not guilty by reason of insanity. At trial, his counsel offered the sanity commission reports of Drs. Turpin and Pinkston as evidence that White did not have the capacity to determine right from wrong at the time of the crime. Dr. Turpin evaluated White and concluded that he was suffering from chronic paranoid schizophrenia and was incapable of distinguishing right from wrong at the time of the offense. Dr. Pinkston also examined White and noted that White was experiencing paranoid delusions, but could not conclude that he could not distinguish right from wrong when he cut Ashlock's neck. The trial court found that White was competent to stand trial.
The minutes of the court show that, at his arraignment on March 26, 2013, White elected trial by jury. On June 15, 2015, White was present in court with his attorney for trial. On the morning of trial, however, the following exchange occurred:
Court: Alright. What does the state intend to try Mr. White on?
D.A.: Attempted second degree murder.
Court: Mr. White says he's waiving a jury trial. Has he formerly [sic ] waived it before?
Defense: Yes.
Court: Does the DA concur? Are you satisfied with his waiver?
D.A.: Sir?
Court: I was just checking with the DA. Are ya'll satisfied with his waiver?
D.A.: We are satisfied with the waiver, but there is another pretrial matter, I think, before we get into this trial that needs to be addressed.
After a discussion of the sanity commission proceedings, the trial court asked again:
Court: Is the state is [sic] satisfied that the defendant has adequately waived his right to trial by jury?
D.A.: Yes, Your Honor.
Court: You are confident in that?
D.A.: Yes, Your Honor.
Court: Very good. I take it you are ready to proceed with trial?
D.A.: Yes, Your Honor....
The bench trial proceeded and the court found White guilty as charged and subsequently sentenced him. This appeal followed.
DISCUSSION
By his first assignment of error, the defendant alleges that the record does not show a "free and voluntary" waiver of his right to a jury trial. The state concedes that the record does not show a valid waiver and agrees that White's conviction and sentence must, therefore, be vacated. Our review of the record confirms that there is no evidence whatsoever of a valid waiver of White's right to trial by jury.
"A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge." La. C. Cr. P. art. 780(A). However, Article I, Section 17 of the Louisiana Constitution requires that "[t]he waiver shall be by written motion filed in the district court not later than forty-five days prior to the date the case is set for trial" ... and "signed by the defendant" and "defendant's counsel unless the defendant waived his right to counsel." La. C. Cr. P. art. 780(B).[2]
*1186 Prior to the legislature's amendment to Art. 780 in 2013,[3] our law did not contain the requirement of a written motion signed by the defendant. Even prior to the amendment, however, our jurisprudence held that a defendant's knowing and intelligent waiver of his right to a jury trial must be sufficiently demonstrated by the record. State v. Muller , 351 So.2d 143 (La. 1977) ; State v. Morris , 49,987 (La. App. 2 Cir. 9/30/15), 178 So.3d 1028 ; State v. Robinson , 48,819 (La. App. 2 Cir. 2/26/14), 136 So.3d 302 ; State v. Hicks , 41,906 (La. App. 2 Cir. 12/20/06), 945 So.2d 959 ; State v. Davis , 41,180 (La. App. 2 Cir. 11/3/06), 942 So.2d 1196. The record on appeal must show some manifestation of an effective waiver. State v. Morris, supra . Because the waiver of the right to a jury trial will not be presumed from a silent record, the waiver must be express. State v. Wilson , 437 So.2d 272 (La. 1983) ; State v. Morris, supra ; State v. Hicks, supra .
Great importance is attached to the right to a jury trial, and a trial judge must exercise great care in allowing a criminal defendant to waive the right. A valid waiver of trial by jury occurs only if the defendant acted voluntarily and knowingly. State v. Kahey , 436 So.2d 475 (La. 1983). In making the determination whether a defendant made a voluntary and knowing waiver, a trial court is required to determine only whether the defendant's waiver was made knowingly and intelligently. State v. Campbell , 42,099 (La. App. 2 Cir. 6/20/07), 960 So.2d 363.
The preferred method is for the district court to advise a defendant of the right to trial by jury in open court before obtaining a waiver, but such a practice is not statutorily required. State v. Robinson, supra ; State v. Campbell, supra . Likewise, it is also preferred, but not necessary, for the defendant to waive the right to a jury trial personally. State v. Pierre , 02-2665 (La. 3/28/03), 842 So.2d 321. Defense counsel may waive the right on the defendant's behalf, provided that the defendant's decision to do so was made knowingly and intelligently. Id.
In State v. Robinson, supra , we said,
While the trial judge must determine if a defendant's jury trial waiver is knowing and intelligent, that determination does not require a Boykin -like colloquy. State v. Campbell, supra . Prior to accepting a jury trial waiver, the trial court is not obligated to conduct a personal colloquy inquiring into a defendant's educational background, literacy, and work history. Id. Additionally, nothing in the statutes or the jurisprudence requires the trial judge to inform a defendant of the details involving the number of jurors and the votes necessary for a conviction. Id.
The remedy employed by courts varies from remanding for a determination as to the voluntariness of the waiver to vacating the conviction and sentence. See above-cited cases.
The record in this case is devoid of any evidence of White's knowing and voluntary waiver of his right to trial by jury. There is no written waiver as required by La. C. Cr. P. art. 780, no express oral waiver either by White or his counsel and no evidence that any such waiver was timely made. The only reference to a waiver of jury trial is contained in the colloquy quoted above, which in no way proves a knowing and voluntary waiver on the part of White.
As the parties have noted, prior jurisprudence offers two possible remedies in this type of case: (1) remand for a determination of the voluntariness of the waiver, *1187 or alternatively, (2) vacate the conviction and sentence. Both defense counsel and the state agree that the latter remedy is more appropriate in this case, particularly since the trial judge who accepted the waiver is retired and several years have passed since the alleged waiver.
Accordingly, we vacate the conviction and sentence in this case. In view of this decision, discussion of White's second assignment of error is pretermitted.
CONCLUSION
For the foregoing reasons, the conviction and sentence of Thomas White are vacated.
CONVICTION AND SENTENCE VACATED.

White's grandmother lived next door to the Ashlocks. Previously, White had lived with his grandmother but eventually moved in with the Ashlocks.

In State v. Bazile , 12-2243 (La. 5/7/13), 144 So.3d 719, the Louisiana Supreme Court held that the 45-day period applies prior to the initial trial date regardless of any subsequent continuances.

La. Acts 2013 No. 343, § 1, effective June 13, 2017.